UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

BRIAN SCOTT HILL,

                         Plaintiff,                    Case No. 1:16-cv-446

v.                                            Honorable Robert Holmes Bell

KIRK BUSSELL et al.,

                         Defendants.

_____/

**OPINION**

          This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kline, Simon, Koenigsknecht, Smith, Stoddard, Heyns, Snyder, Chaffin, Krick, Young, Nevins, Duncan, Fenby, Russell and Gonzales. The Court also will dismiss Plaintiff's due process claims against all Defendants. The Court will serve Plaintiff's First Amendment claims against Defendants Bussell, McQuery, Niemiec, Miller and Williams.

**Factual Allegations**

Plaintiff Brian Scott Hill presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS), though the actions about which he complains occurred while he was housed at the Carson City Correctional Facility (DRF). He sues Michigan Governor Rick Snyder, MDOC Director Daniel Heyns,[1] MDOC Administrative Assistant Richard Russell, and the following DRF officials:  Mail Room Clerk Kirk Bussell; Assistant Resident Unit Manager (ARUM) Christopher McQuery; Resident Unit Manager (RUM) Cheryl Miller; Grievance Coordinators D. Kline, K. Smith, K. Chaffin and Sharon Duncan; Administrative Officer John Simon; Administrative Assistant Jacque Koenigsknecht; Warden Cathleen Stoddard; Assistant Resident Unit Supervisors (ARUSs) Chad Williams and Joseph Niemiec; Inspectors (unknown) Young and Khris Nevins; Assistant Deputy Warden (ADW) Laura Krick; Deputy Warden Dave Fenby; and Litigation Coordinator D. Gonzales.

Plaintiff alleges that, on June 20, 2014, his mother purchased two books for him, which were ordered through Amazon.com, but were fulfilled through another vendor.  On June 26, Defendant Bussell rejected the books and generated a mail-rejection form.  Plaintiff alleges that the form was incomplete, because it failed to identify the specific content upon which the form was based and failed to include the book titles, in violation of MICH. COMP. LAWS § 800.43(3) and MICH. DEP'T OF CORR., Policy Directive 05-03-118(OO).  Defendant McQuery delivered the rejection notice to Plaintiff on June 27.  Plaintiff complained to McQuery that the notice was defective, and he asked McQuery to rescind the rejection notice and return it to the mail room for correction. McQuery declined to do so.

---

[1] Plaintiff spells the name "Heynes," but the Court will use the correct spelling of the name of the former Director of the MDOC, Daniel "Heyns."

McQuery allegedly delayed the hearing on the notice for 18 days, because he put the paperwork in his desk drawer.  When Defendant Miller discovered the paperwork on August 14, 2014, she held an immediate hearing.  Plaintiff told Miller that the rejection notice was defective.  Defendant Miller told Plaintiff that it was not defective, referring Plaintiff to the statement on the form, which described the reason for the rejection as being a "[t]hreat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner." (Compl, ECF No. 1, PageID.14.)  She also showed Plaintiff the two books proposed to be rejected.  Defendant Miller advised Plaintiff that the books, which were about building websites and computer programming, were on the restricted publication list.  When Plaintiff challenged Miller's assertion, she checked the list, and she discovered that the books were not on the list.  However, because the books were guides for the professional design of websites, Miller concluded that they posed a threat to security and would be rejected.  Plaintiff argued the point, asserting that, because he had no access to a computer, the books could not pose a threat.  Miller asked Plaintiff whether he wanted the books sent back to the vendor or wanted to have the books destroyed.  Plaintiff asked Miller to hold the books until the administrative process was completed.  Miller replied that, because Plaintiff would not choose, she would order the books destroyed.  She ordered Plaintiff out of the office and advised Plaintiff to file a grievance if he wished to do so.

Plaintiff received a copy of the hearing report on August 28, 2014, and he filed a grievance on September 3, 2014.  Defendant Kline acknowledged receipt of the grievance on September 4, and Defendant Simon responded to the grievance on September 17, 2014, without having interviewed Plaintiff.  At his interview with Plaintiff on September 19, Simon showed the grievance response to Plaintiff and advised Plaintiff that the books were similar to two books on the

restricted book list.  Plaintiff again explained his view that the rejection notice was improperly completed and demanded that the notice be returned to the mail room for correction.  Simon refused. On September 22, 2014, Defendant Koenigsknecht reviewed the grievance and response, and signed off on the Step-I grievance.  Defendant K. Smith gave Plaintiff a Step-II grievance form, ostensibly without adequate investigation, and Plaintiff submitted it for Step-II review.  Defendant Stoddard denied the Step-II grievance on October 14, 2014.  Plaintiff submitted a Step-III grievance, but he did not receive a response for eight months.  On January 12, 2015, Defendant wrote to Defendant Heyns, complaining that the MDOC had failed to timely respond, in violation of MICH. DEP'T OF CORR., Policy Directive 03.02.130(S).  Heyns did not reply to the letter.  Thereafter, Plaintiff's sister sent a letter to Defendant Snyder, which also went unanswered.

On February 24, 2015, Defendant Bussell rejected another book ordered through Amazon.com, but fulfilled by JVG Books.  Plaintiff complains that the rejection again violated policy by failing to identify the item in question.  Defendant Williams delievered the rejection notice to Plaintiff on March 27, 2015.  Williams allegedly ignored Plaintiff's assertions that the rejection was improper.  Plaintiff signed a disbursement to authorize funds to return the item to Amazon.com. On April 2, 2015, Defendant Russell rejected another book sent by FatBrain, in fulfillment of an Amazon.com order.  On April 6, 2016, Williams delivered the notice of rejection and again ignored Plaintiff's claim that the rejection notice was improperly completed.  Williams purportedly became angry about Plaintiff's repeated assertions that the mail room was violating policy in completing rejection forms.  Plaintiff requested an administrative hearing, but signed the rejection notice under duress.  On May 4, 2015, Defendant Williams called Plaintiff into the office and asked what Plaintiff wanted done with the book.  Plaintiff conceded that, although the form of the rejection notice was

- 4 -

incorrect, the rejection was valid.  He therefore agreed to have the book picked up by a family member.

On May 10, 2015, Plaintiff's family ordered him a book from Barnes & Noble, an authorized MDOC vendor.  Defendant Bussell rejected the book on May 19, 2015.  Plaintiff complains that the notice did not comply with MICH. COMP. LAWS § 800.43(3), because it did not identify the precise content on which the prohibition was based.  He also complains that he did not receive a timely notice.  On June 3, 2015, after Plaintiff received no responses to his inquiries, he asked his sister to intervene to contact the DRF administrative offices.  She spoke with Defendant Niemiec, who advised that the rejection notice had been given to Plaintiff, though he subsequently learned that the notice had not been provided.  After the call, Niemiec met with Plaintiff and delivered the notice.  Plaintiff alleges that Defendant Niemiec made a derogatory comment about his sister.  Upon receiving the notice of rejection, Plaintiff told Niemiec that the notice was defective, but Niemiec refused to make a change.  Plaintiff told Niemiec that his First and Fourteenth Amendment rights were being violated, and he refused to sign the mail-rejection form.

Defendant Chaffin gave Plaintiff a grievance receipt on June 5.  On June 9, Plaintiff submitted two disbursement authorization forms to Defendant Williams.  Defendant Williams summoned Plaintiff.  Williams advised that prisoners were not allowed to use references to the Uniform Commercial Code in their communications.  Plaintiff had referenced UCC 1-308, as a reservation of rights when signing under duress.  Plaintiff alleges that Defendant Williams committed forgery by striking the reference.  Plaintiff accused Williams of violating MICH. COMP. LAWS § 440.3401(2), and Williams became upset, making a derogatory remark to Plaintiff.

On the evening of June 3, 2015, Plaintiff submitted a Step-I grievance about the June 3, 2015 rejection.  On June 10, Defendant Chaffin changed the identifier on Plaintiff's Step-I grievance and issued a grievance rejection, indicating that it was a nongrievable matter under MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ XX. On June 22, Defendant Krick reviewed and approved Defendant Chaffin's disposition of Plaintiff grievance about the mail rejection.  Plaintiff received the grievance response on July 8, 2015.  He requested a Step-II grievance form the following day, through interdepartmental mail, and he filed a Step-II grievance.  Plaintiff received a Step-II response from Defendant Duncan on August 7, 2015, which determined that Plaintiff had been present at the beginning of the administrative hearing, but had left during the hearing process. Defendant Russell denied the Step-III grievance on September 22, 2015.

On June 10, 2015, Defendant's sister ordered a SecurePak for Plaintiff.  On June 16, 2015 Defendant Williams held an administrative hearing on the mail rejection, outside Plaintiff's presence.  Plaintiff claims that Williams entered fraudulent information on the form by including a section for "PRISONER'S STATEMENT."  (*Id.*, PageID.27.)  Plaintiff went to Williams' office to ask why he had not been allowed to be present at the administrative hearing.  Williams insisted that Plaintiff had been present, which Plaintiff contends was a lie.  Plaintiff then asked his sister to contact the DRF inspector about the issue.  Plaintiff received an email from his sister that afternoon, but the content of the email was blocked.  Plaintiff then sent an email to his sister, informing her that his phone was being blocked.  Plaintiff's family members, becoming concerned about Plaintiff's safety, contacted the prison and learned that Plaintiff was being transferred and was unreachable. Plaintiff's sister then contacted the Michigan State Police to report her concerns.  Later that evening, Plaintiff arranged for a friend to call his family to let them know he was safe, but that his email and

phone were being blocked.  Another sister then complained to Defendant Young, alleging that Plaintiff's mail and phone were being blocked in retaliation.  Young advised that no reason existed for Plaintiff's phone and email to be blocked.  On June 22, 2015, Plaintiff's sister contacted Defendant Nevins, requesting an investigation.

On June 17, Plaintiff was instructed to pack his belongings for transfer to another facility.  He was transferred to JCF on June 18, 2015.  On August 13, 2015, a JCS resident unit manager advised Plaintiff that a former cellmate had accused Plaintiff of sexual misconduct, which was under investigation.  Plaintiff told his sister.  The investigation was later dropped as unfounded, and on August 18, 2015, Defendant's sister was so advised

On July 24, 2015, Plaintiff's sister contacted Amy at DRF, asking about the SecurePak Plaintiff had never received.  Amy advised that the SecurePak had been sent back because of an investigation into Plaintiff's mail.  She advised that the rejection had been in error and that no investigation had taken place.  Another sister contacted Access/SecurePak on August 15, 2015, and she was informed that, according to DRF administration, Plaintiff was ineligible to receive a SecurePak.  She also contacted Defendant Nevins at DRF, to determine what was happening with the requested investigation into Defendant Williams' treatment of Plaintiff.  On August 18, Defendant Nevins informed Plaintiff's sister that the investigation had been dropped because the accusation was determined to lack merit.  On September 8, following additional contacts from Plaintiff's sister, Defendant Nevins advised her to contact Defendant Fenby, the deputy warden.  On September 9, Defendant Fenby told Plaintiff's sister that she was coddling Plaintiff, who was 52 years old.  Fenby asked Plaintiff's sister if she was aware of the sexual-misconduct investigation, and she replied that she was aware both of the investigation and that it had been dropped.

- 7 -

Plaintiff's sister sent multiple letters to DRF officials in September 2015, demanding a formal report on Plaintiff's request for investigation of Williams and the investigation of sexual misconduct.  She also complained about a perceived conflict of interest for those involved in both investigations.  On November 4, 2015, Defendant Gonzales sent Plaintiff's sister a letter, informing her that both investigations had been closed because the complaints were unfounded.

Plaintiff recites 40 separate counts in his complaint:  Defendant Mail Room Clerk Bussell violated the First Amendment by rejecting his computer books and violated the Due Process Clause of the Fourteenth Amendment by completing a defective mail-rejection notice, in violation of state law and prison policy; Defendant ARUM McQuery violated the First Amendment by not allowing Plaintiff to access the books and violated the Fourteenth Amendment by serving a defective notice of rejection on Plaintiff; Defendant RUM Miller violated the Fourteenth Amendment by upholding the defective rejection notice; Defendant Grievance Coordinator Kline violated the First Amendment by denying his grievance and refusing to allow Plaintiff access to the books and violated the Fourteenth Amendment by not conducting a proper investigation on the grievance; Defendant Business Manager Simon violated the First Amendment by disallowing Plaintiff access to the books and violated the Fourteenth Amendment by upholding the mail-rejection notice and completing the report before interviewing Plaintiff; Defendant Administrative Assistant Koenigsknecht violated the First Amendment by disallowing the books and violated the Fourteenth Amendment by failing to adequately investigate the Step-I grievance; Defendant Grievance Coordinator Smith violated the First Amendment by failing to correct the denial of the books and violated due process by denying the grievance; Defendant Warden Stoddard violated the First Amendment by denying Plaintiff access to the books and violated due process by upholding the

grievance challenging the defective notice of rejection; Defendant MDOC Director Heyns denied the First Amendment by disallowing the books and violated due process by failing to investigate the grievance and correct the defective notice; Defendant Governor Snyder violated the First and Fourteenth Amendment by failing to correct the denial of the books and failing to investigate the defective rejection notice; Defendant ARUS Williams violated the First Amendment by not allowing Plaintiff access to the books and denied due process by serving a defective notice of rejection; Defendant ARUS Niemiec violated the First Amendment by denying the books and denied due process by serving a defective rejection form; Defendant Grievance Coordinator Chaffin violated the First Amendment by not allowing the books and denied due process by failing to conduct an adequate grievance investigation; Defendant Inspector Young violated the First Amendment by not allowing the books and denied due process when he allowed the suspension of Plaintiff's phone and email privileges; Defendant ADW Krick violated the First Amendment by denying the books and violated due proceess by failing to adequately resolve a grievance; Defendant Inspector Nevins violated the First Amendment by denying the books and violated due process when he failed to investigate Plaintiff's claims of corruption and abuse; Defendant Grievance Coordinator Duncan violated the First Amendment by not allowing the books and denied due process by not conducting a thorough investigation of a grievance;   Defendant Deputy Warden Fenby violated the First Amendment by refusing to give Plaintiff a book and violated due process by failing to investigate complaints against Defendant Williams; Defendant MDOC Administrator Russell violated the First Amendment by not allowing the books and denied due process by upholding a grievance decision at Step-III; Defendant Litigation Coordinator Gonzales violated the First Amendment by denying the books and denied due process by not investigating Plaintiff's claims against Williams.

**Discussion**

I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Supervisory Liability

While Plaintiff alleges that all Defendants violated his rights under the First and Fourteenth Amendments, he fails to allege specific actions taken by Defendants Kline, Simon, Koenigsknecht, Smith, Stoddard, Heyns, Snyder, Chaffin, Krick, Young, Nevins, Duncan, Fenby, Russell and Gonzales, other than to assert that they failed to conduct an investigation in response to his grievances and requests for investigation and/or they failed to supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Kline, Simon, Koenigsknecht, Smith, Stoddard, Heyns, Snyder, Chaffin, Krick, Young, Nevins, Duncan, Fenby, Russell and Gonzales engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

## B.    Due Process

Plaintiff alleges that Defendant Bussell improperly completed the mail-restriction notice, by failing to include specific information about the reasons for the mail rejections, ostensibly in violation of MICH. COMP. LAWS § 800.43(3) and MICH. DEP'T OF CORR., Policy Directive 05-03-118(OO).  In addition, he argues that Defendants Miller and Williams, in upholding the mail rejections and refusing to return them for missing detail, violated state law and MDOC policy. Further, Plaintiff contends that all other Defendants violated due process when they delivered refused to alter or return those forms, despite Plaintiff's complaints.  Plaintiff alleges that, by failing to enforce state law and policy, Defendants violated his right to due process.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Similarly, a defendant's failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not

- 12 -

rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  As a consequence, Defendants' alleged failures to follow state law and policy when completing and delivering the rejection notices fail to state a due process claim.

In addition, to the extent that Plaintiff argues that his books were taken without due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions

- 13 -

in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

### C.  First Amendment

Plaintiff argues that his First Amendment rights were violated when remaining Defendants Bussell, McQuery, Niemiec, Miller and Williams denied his right to receive books on advanced computer programming and web design.  The Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on these five Defendants.  *See King v. Bur. of Fed. Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (holding that allegations that a prison official denied a prisoner access to computer programming books, where the prisoner had no access to prison computers, were sufficient to state a First Amendment claim).

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kline, Simon, Koenigsknecht, Smith, Stoddard, Heyns, Snyder, Chaffin, Krick, Young, Nevins, Duncan, Fenby, Russell and Gonzales will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will dismiss Plaintiff's due process claims against all Defendants.  The Court will serve the complaint against Defendants Bussell, McQuery, Niemiec, Miller and Williams.

An Order consistent with this Opinion will be entered.

Dated: <u>June 6, 2016</u>                          /s/ Robert Holmes Bell                          
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE

- 14 -